AUGUSTUS D. LEIGHTON, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

Under the provision of the Revised Statutes (2 R. S. 209, §§ 5, 6,) authorizing Courts of General Sessions to send indictments to "the next Court of Oyer and Terminer," it is not necessary to give the accused notice of application for an order of removal.

The fact that the record does not show that the indictment was sent to the next Oyer and Terminer is no ground for the reversal of a judgment of conviction. If there was error in that respect, it should be shown, it cannot be inferred.

The said provisions are not limited or affected by the act of 1855 (chap. 337, Laws of 1855), in reference to the Courts of Sessions of the city of New York; and the Court of General Sessions in that city has the power of removal.

Upon the trial of a criminal action, it is in the discretion of the court, after the defense has rested, to allow the prosecution to give evidence in aid of the case already made, and which would have been competent if offered in the first instance; and this, although the evidence is in contradiction of matter sworn to by the prisoner.

To bring a case within the statutory definition of murder in the first degree (§ 5, chap. 644, Laws of 1873), while there must be deliberation as well as premeditation, if the killing is not the instant effect of impulse, if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle, it is sufficient to characterize the crime.

(Submitted February 1, 1882 ; decided February 28, 1882.)

ERROR to the General Term of the Supreme Court, in the first judicial department, to review judgment entered upon an order made May 20, 1881, which affirmed a judgment of the Court of Oyer and Terminer of the county of New York, entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree.

The material facts appear in the opinion.

| | |
|---|---|
| 88 | 117 |
| 139 | 361 |
| 88 | 117 |
| 149 | 267 |
| 88 | 117 |
| 153 | 36 |
| 88 | 117 |
| 154 | 368 |
| 88 | 117 |
| 157 | 194 |
| 88 | 117 |
| 159 | 352 |
| 88 | 117 |
| f161 | 375 |
| 88 | 117 |
| 173 | ⁵513 |

*Charles S. Spencer* for plaintiff. in error. The plaintiff in error was damnified by the transfer of the indictment from the Court of General Sessions to the Oyer and Terminer, for the reason that this court and the Court of Appeals on writ of error could review the facts as well as the law. (Laws of 1855, chap. 337, § 3.) The same construction should be placed upon the word "deliberation" in the statutes for murder, as is placed upon the words "lying in wait" in the statute of mayhem, and under that statute it has been held that great deliberation is necessary to constitute the offense. (*Godfrey* v. *The People*, 63 N. Y. 207.)

*John McKeon*, district attorney, for defendant in error. The court properly denied the motion to send the case back to the General Sessions. (*Thompson* v. *The People*, 6 Hun, 135.)

DANFORTH, J. *First*, The court did not err in refusing to send the case back to the General Sessions. The indictment was found in that court, and sent by it to the Oyer and Terminer to be there determined according to law. The defendant asked that it be sent back, on the ground, first, that the order of removal was made without notice; second, that by it he was deprived of certain rights which under the law he had in that court, *viz.:* of having his case reviewed upon questions of fact as well as law by the appellate courts on a writ of·error and stay of proceedings. A third ground of error is now presented, viz.: that the record does not show whether the indictment was sent from the Court of General Sessions to the next Court of Oyer and Terminer, or to some other and more remote Oyer and Terminer.

The Revised Statutes (vol. 2, title 5, pt. 3, chap. 1, p. 209, §§ 6 and 7), confers authority upon the Court of General Sessions, to send all indictments for offenses not triable therein to the next Court of Oyer and Terminer; and provides that the said court may also, by an order to be entered in their minutes, send all indictments for defenses triable before them to the next Court of Oyer and Terminer. It will be seen that

no provision is there made for notice to the accused, and no statute or other authority has been referred to by the appellant to show that it is necessary.

It does not appear that the statute was not complied with and the indictment sent, as the appellant claims it should have been, to the then next court. If there was error in that respect, it should be shown by the appellant; it cannot be inferred.

The other objection rests upon the provisions of chapter 337 of the Laws of 1855, entitled "An act to enlarge the jurisdiction of the Courts of the General and Special Sessions of the Peace, in and for the city and county of New York," and especially upon section third of that act, which provides for a review, by writ of error, of every conviction for a capital offense, or for one punishable as a minimum punishment by imprisonment for life in a State's prison, and permits the appellate court " to order a new trial, if it should be satisfied that the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below."

I do not think it necessary to inquire how far the provisions of this section are beneficial to the appellant. It is enough that the act contains no reference to the statutes before referred to, nor any provision limiting their operation, or depriving the court of any power there conferred. (*Maxwell on Statutes, p.* 136.)

*Second.* After the evidence on the part of the prosecution had been put in, the prisoner was sworn, and by himself and others, testimony was given in his behalf. He then rested, and thereupon the public prosecutor called a witness and offered to give, by him, evidence which it was conceded was in aid of the case already made by the people, and which would have been competent, if offered before the prisoner took the case. It was objected to but admitted. The testimony was of weight, but its admission at any stage of the case was within the discretion of the trial judge, and an exception to his ruling is unavailing. Nor is the rule altered because the testimony

also happened to be in contradiction of matter before sworn to by the prisoner.

*Third.* At its close the prisoner's counsel " excepted to all portions of the charge in reference to the question of the time required for premeditation and deliberation." To bring the case within the statutory definition of murder in the first degree, it was necessary that the crime should be " perpetrated from the deliberate and premeditated design to effect the death of the person killed." (*Laws of* 1873, *chap.* 644, § 5.) An act co-existent with and inseparable from a sudden impulse, although premeditated, could not be deemed deliberate, as when under sudden and great provocation one instantly, although intentionally, kills another. But the statute is not satisfied unless the intention was deliberated upon. If the impulse is followed by reflection, that is deliberation ; hesitation, even, may imply deliberation ; so may threats against another, and selection of means with which to perpetrate the deed. If, therefore, the killing is not the instant effect of impulse, if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder.

The charge upon this point was most favorable to the prisoner. After stating the statute (*supra*), the judge said : " There must, therefore, be, in order to establish the crime of murder in the first degree, deliberation and premeditation ; but there is no time prescribed within which these operations of the mind must occur ; it is sufficient if their exercise was accomplished when the deed was done resulting in the death." Again he said : " It is enough if there is time for the mind to think upon — to consider the act of killing, to meditate upon it, to weigh it, and then to determine to do it." Immediately after this follows that portion of the charge to which the learned counsel for the appellant directs our attention. " For example," said the judge, " if I, having, from any reason, it matters not what, an enmity toward another, should start from this point and walk to the corner of Chambers

street, weigh in my mind, deliberate upon and premeditate a deadly assault upon another, and at that corner, meeting there the person toward whom my thoughts were directed, I struck the deadly blow, that would be sufficient deliberation and sufficient premeditation to perfect the crime of murder in the first degree. It is enough that the mind operates in these two respects, to accomplish it, and to present all the elements that are necessary to establish murder in the first degree.''

In this there was no error. Then followed a statement of the evidence bearing upon the proposition just laid down. It has been recited in the learned and elaborate opinion of the court below, its correctness has not been denied by the appellant's counsel, and it need not be repeated. It was, in our opinion, quite enough for submission to the jury.

The other points presented relate to the weight of certain evidence, and the application for a new trial upon newly-discovered evidence. They present no question subject to review by us.

The judgment should be affirmed.

All concur.

Judgment affirmed.